# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Oliver Jarrell, Petitioner Below,**
**Petitioner**

**vs) No. 12-0616** (Jackson County 07-C-148, 07-C-150)

**David Ballard, Warden, Mt. Olive Correctional**
**Complex, Respondent Below,**
**Respondent**

**FILED**

April 16, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Oliver Jarrell, by counsel Drannon L. Adkins, appeals the April 26, 2012 order of the Circuit Court of Jackson County reentering its prior judgment denying the petition for writ of habeas corpus. Respondent Ballard, by counsel, has filed a response, to which petitioner has filed a reply. Petitioner has also filed a supplemental appendix.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Following a jury trial, petitioner was convicted of first degree murder and conspiracy in 1999. He was thereafter sentenced to incarceration for life, without mercy, and a term of incarceration of one to five years, said sentences to run consecutively. Petitioner appealed this conviction and the Court refused the same in January of 2001. In 2002, petitioner filed his first petition for writ of habeas corpus in the circuit court. After being appointed counsel and filing an amended petition, the circuit court summarily denied petitioner habeas relief. Petitioner appealed the denial, but this Court refused that appeal in November of 2004. In October of 2007, petitioner filed a second petition for writ of habeas corpus in the circuit court. He was again appointed counsel and an amended petition was filed. After holding an omnibus hearing, the circuit court denied petitioner habeas relief.

On appeal, petitioner alleges that the circuit court erred in denying his petition for writ of habeas corpus. In support, petitioner alleges that the circuit court erred in failing to conclude that petitioner's conviction was obtained by the use of a coerced confession because the trial court improperly denied a motion to suppress the confession and because petitioner is of such a low level of intellectual functioning that he could not have knowingly and intelligently waived his constitutional rights. Further, petitioner alleges that the circuit court erred in failing to conclude that petitioner's conviction was obtained by the use of evidence obtained pursuant to an unconstitutional search and seizure because the investigating officers did not have a search

1

warrant when they entered petitioner's property to recover the murder weapon and because no exigent circumstances existed to allow them to act without a warrant. Lastly, petitioner alleges that the circuit court erred in failing to conclude that both trial counsel and prior habeas counsel were ineffective. In relation to trial counsel, petitioner asserts, among other things, that counsel prevented him from testifying, failed to object to substantial hearsay statements from witnesses, failed to adduce any evidence during petitioner's case-in-chief, failed to move the lower court for bifurcation of guilt and mercy, and failed to call witnesses to support mercy. Petitioner also asserts that trial counsel failed to file a meaningful appeal of the conviction. In regard to prior habeas counsel, petitioner asserts that by failing to elicit further grounds for habeas relief, petitioner was deprived of a full and fair hearing on the merits of his original habeas petition.

Respondent argues that the circuit court did not err in denying petitioner habeas relief. In support, respondent argues that all of petitioner's claims in this second habeas corpus proceeding were actually barred by res judicata because the circuit court previously ruled on petitioner's first petition for writ of habeas corpus and this Court refused the subsequent appeal. As such, respondent argues that the only claim petitioner was entitled to raise in this second habeas proceeding was ineffective assistance of prior habeas counsel. However, respondent notes that the circuit court fully addressed all claims and argues that denial of the petition was proper. In response to petitioner's specific allegations, respondent argues that petitioner has failed to articulate a reason the circuit court's findings and conclusions should be set aside. Lastly, respondent argues that petitioner's claim of ineffective assistance of prior habeas counsel is essentially moot in light of the circuit court's decision to fully consider all grounds asserted in this second petition for writ of habeas corpus.

This Court has previously held that

> [i]n reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006). After careful consideration of the parties' arguments, this Court concludes that the circuit court did not abuse its discretion in denying the petition for writ of habeas corpus. Further, in regard to petitioner's assignment of error regarding alleged ineffective assistance of prior habeas counsel, the Court finds that the circuit court did not need to address this issue in light of its full consideration of all issues raised in the subject petition for writ of habeas corpus. Having reviewed the circuit court's "Judgment Order" entered on January 20, 2011, we hereby adopt and incorporate the circuit court's well-reasoned findings and conclusions as to the assignments of error raised in this appeal. The Clerk is directed to attach a copy of the circuit court's order to this memorandum decision.

For the foregoing reasons, we find no error in the decision of the circuit court and its January 20, 2011 order denying the petition for writ of habeas corpus is affirmed.

Affirmed.

**ISSUED:** April 16, 2013

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

*12-0616*

IN THE CIRCUIT COURT OF JACKSON COUNTY, WEST VIRGINIA:

STATE OF WEST VIRGINIA
*ex rel* OLIVER JARRELL,

    Petitioner,

vs.                  //              Habeas Corpus
                                    Civil Action No. 07-C-148
                            (Judge Thomas C. Evans, III)

DAVID BALLARD, WARDEN,
Mt. Olive Correctional Facility,

    Respondent.

## JUDGMENT ORDER

Pending for decision is the Amended Petition for a writ of habeas corpus. The court has considered the Amended Petition, together with the response thereto. In addition, the court has before it the testimony of respondent's witnesses (Lawrence Hancock, Esq. and G. Ernest Skaggs, Esq.) in open court and the testimony of petitioner's witnesses (Oliver Jarrell and Buddy Jarrell) as contained in evidentiary depositions duly filed herein. Further, the evidentiary record of this case is supplemented by matters of record in the case of "State of West Virginia v. Oliver A. Jarrell," Case No. 99-F-36 of this court, of which the court takes judicial notice.

Upon consideration of all of the evidence, the Court ,makes the following Findings of Fact (found by a preponderance of the evidence) and Conclusions of Law:

1. Petitioner Oliver Jarrell is confined in the custody of the Warden of the Mt Olive Correctional Facility, Fayette County, West Virginia, based upon a sentencing order entered by this court on November 16, 1999, in Case No.

1

P300

99-F-36, sentencing him to life without mercy for his conviction for First Degree Murder and an indeterminate, consecutive sentence of not less than one year nor more than five years for the crime of Conspiracy.

2. In the underlying case, Petitioner was represented by Laurence Hancock and H. Beth Sears, Hancock & Sears, who were appointed by this court. Petitioner Jarrell pleaded "not guilty" to each count in the indictment. He was tried and convicted by a twelve-member Jackson County petit jury. Petitioner Jarrell did not testify on his own behalf at the trial of his case, having personally waived his right to testify.

3. On June 11, 2000, Petitioner Jarrell filed a petition with the West Virginia Supreme Court of Appeals for a direct appeal from the Jackson County Circuit Court judgment of conviction, based upon the following asserted trial errors: the inadmissibility of his confession based on violation of the prompt presentment rule, and the failure of the Court to suppress evidence obtained during an illegal search.

4. The petition for appeal was denied on January 9, 2001, and no review of the above-mentioned grounds was afforded the petitioner.

5. In 2002, Petitioner Jarrell filed a habeas corpus petition attacking legality of his confinement pursuant to these convictions. The said petition was filed with this court and was assigned Case No. 02-C-125. An amended petition for a writ of habeas corpus *ad subjiciendum* was filed after the appointment of counsel for the petitioner, namely, G. Ernest Skaggs, Esq.

6. The grounds raised by Oliver Jarrell in his 2002 amended petition

2

P30

were:

a) that the circuit court committed error in granting the State's motion *in limine* prohibiting any discussion of the fact that the assistant prosecuting attorney was married to an investigating officer who was present at the scene of the murder and who made a videotape of the scene; and

b) The Amended Petition in 02-C-125 states: "This counsel does not believe that defense counsel was ineffective. The defense attorneys knew of Judge McCarty's previous ruling, and in light of Judge McCarty's ruling on this matter, defense counsel was not ineffective. However, counsel has included a discussion of relevant case law on the issue of ineffective assistance of counsel in case this court should feel that the issue is relevant."

Petitioner's present counsel believes that this is a sufficient allegation to the effect that trial counsel was ineffective. The court believes otherwise. *Rule 2(a)(2) of the Rules Governing Post-Conviction Habeas Corpus Proceedings in West Virginia* requires that a Petition for relief state:

(2) a summary of the facts supporting each of the grounds specified; . . . .

Not only did the 2002 Amended Petition fail to allege trial counsel was ineffective, no facts were provided supporting any claim whatsoever of ineffective assistance of counsel.

7. In the 2002 habeas case, the Petitioner, Oliver Jarrell, waived and relinquished all grounds for habeas relief, except for the grounds alleged in the Amended Petitioner and ineffective assistance of counsel, and the court accepted such waiver, finding that it was voluntarily made with the advice of counsel.

The Amended Petition was dismissed without further hearing, in part,

3

on the basis that it failed to allege ineffective assistance of counsel as a ground for relief.

On November 30, 2004, the W. Va. Supreme Court of Appeals refused Jarrell's Petition for Appeal (No. 041973) from the final order in Case No. 02-C-125.

8. On October 27, 2007, Jarrell filed the pending habeas petition in this court. The amended petition in this case (No. 07-C-148) alleges that Oliver A. Jarrell is being held unlawfully for the following reasons:

a. the conviction was obtained by the use of a coerced confession;

b. the conviction was obtained by the use of evidence gained pursuant to an unconstitutional search and seizure;

c. the conviction was obtained pursuant to an unlawful arrest;

d. the conviction was obtained by a violation of the privilege against self-incrimination;

e. the conviction was obtained by the denial of effective assistance of counsel;

f. the conviction became final by virtue of the denial of petitioner's right to effective counsel for a meaningful appeal;

g. the conviction was otherwise tainted by the various numerous errors which effectively denied the petitioner due process of law; and

h. the petitioner's original petition for habeas corpus was illusory inasmuch as he was precluded from effectively litigating the above-mentioned issues in Jackson County Case No. 02-C-125 by virtue of the ineffectiveness of his counsel in such habeas corpus case and the ineffectiveness of such counsel in the appeal from that case, all of which being exacerbated by the petitioner's marginal intellect.

4

9.     The record in this case (namely, the amended petition in Case No. 07-C-148) demonstrates Oliver Jarrell's execution of a *Losh* list, by which the petitioner has waived any ground for relief not affirmatively presented herein, and which demonstration is corroborated by the deposition testimony of Oliver Jarrell.

10.     The relevant facts relating to these grounds are as follows:

*Ground ⓐ - - Confession was obtained by the use of a coerced confession*

*Ground ⓔ - - the conviction was obtained pursuant to an unlawful arrest*

*Ground ⓕ - - the conviction was obtained by a violation of the privilege against self-incrimination*

On October 20, 1998, Richard O. Ladd, a 48 year old father of two young children, was murdered in his home in Jackson County, West Virginia. Petitioner Oliver "Buddy" Jarrell and Jill Hodge were hiding in the Ladd residence when Richard Ladd arrived home from work. Upon Ladd's entry into his home, Petitioner Jarrell shot Ladd once in the chest with a 30-30 caliber Model 94 Winchester rifle causing his death. Jill Hodge pleaded guilty to second degree murder and was sentenced to forty years in prison. Charlie Hodge, Jill's father, pled guilty to voluntary manslaughter and received a sentence of fifteen years. The victim's spouse, Robin Ladd, was convicted by a Jury of First Degree Murder and was sentenced to life with mercy; in addition, she was convicted of Conspiracy and received a consecutive sentence of not less than one year nor more than five years. Robin Ladd conspired with Charlie Hodge, Jill Hodge and Oliver Jarrell to cause the murder of her

5

husband.

About one month following the murder of Richard Ladd, the investigation by law enforcement indicated possible involvement by Petitioner Jarrell and Jill Hodge. During the early morning hours of November 20, 1998, two W. Va. State troopers traveled to Petitioner's home, located in or near Clear Creek, Raleigh County, West Virginia, to interview Petitioner Jarrell. After knocking on Petitioner's door for a period of time, Petitioner and his son came to the door and opened it. The troopers asked that Petitioner if he would come with them to the Raleigh County state police detachment to be questioned in connection with the murder case. The Petitioner agreed. Petitioner was not under arrest at that time, and his freedom was not being denied him in any way. He voluntarily accompanied the police to the Beckley detachment for the interview.

Shortly after arrival at the police detachment in Beckley, Petitioner Jarrell was fully advised of his Miranda rights. He was further advised not only that he was not under arrest, but that he was free to leave. The form containing these rights was read to the Petitioner, as he indicated to the policeman that he could not read. A written waiver of the Miranda rights was then obtained and the police began questioning Petitioner about the matter.

After approximately 2 to 3 hours of questioning, Petitioner Jarrell admitted that he shot and killed Richard Ladd. At approximately 6 a.m., Petitioner was again advised of, and waived, his Miranda rights and thereafter provided a digitally recorded statement against interest amounting to a full

6

confession of his guilt regarding this murder.

The Petitioner, Jarrell, was arraigned before a Raleigh County Magistrate at approximately Noon of the same day. Delay was proven to be attributable to an administrative issue in obtaining a Murder warrant from Jackson County Magistrate Court. The officer with knowledge of the matter was testifying that morning in connection with a preliminary hearing in a case against another person implicated in the Ladd murder.[1] The delay came subsequent to the confession; there is no credible evidence that Petitioner was under arrest until after he confessed to the murder, and the "prompt presentment" rule was, therefore, not violated. Certainly, one cannot say that Petitioner's confession is attributable to delay in presenting Petitioner to a Magistrate in Raleigh County. *See State v. Newcomb*, 223 W. Va. 843, 679 S.E.2d 675(2009)("Ordinarily, the delay in taking an accused who is under arrest to a magistrate after a confession has been obtained from him does not

---

[1] On June 28, 1999, the trial court conducted a lengthy suppression motion hearing, during which 4 police officers testified about the events occurring at Petitioner's home during the early morning hours of November 20, 1998; events at the police detachment later on that day; and, about seizure of evidence. Although provided an opportunity to present evidence, Petitioner Jarrell declined and did not testify at that hearing; neither did the Petitioner's son, Buddy Jarrell. In fact, Petitioner presented no evidence. However, in 2010, evidentiary depositions were obtained in the instant matter from the Petitioner and his son and were admitted into evidence and have been carefully considered by the court. Those depositions contradict the testimony of the policemen presented at the 1999 suppression hearing in most respects. The deposition testimony, when considered with the suppression hearing testimony offered by the State and other circumstances in this case, is not sufficiently credible to overcome this court's finding by a preponderance that the confession was voluntary, free from coercion, or other untoward conduct by the police. Petitioner Jarrell's claims that he was arrested at his home; that he requested counsel; that he was tricked into signing a Miranda rights waiver; that he was pressured, threatened and promised a lenient sentence inducing him to confess to the murder; and, that he told his lawyer that he wanted to testify at the suppression hearing and at trial

7

vitiate the confession under the prompt presentment rule.")

In syllabus point 5 of **State v. Starr**, 158 W.Va. 905, 216 S.E.2d 242 (1975), the

Court stated:

> The State must prove, at least by a preponderance of the evidence, that confessions or statements of an accused which amount to admissions of part or all of an offense were voluntary before such may be admitted into the evidence of a criminal case.

"[T]he voluntariness of a confession is an inquiry that must be gauged by the totality of the circumstances under which it was given including the background, experience and conduct of the accused." **State v. Lopez**, 197 W. Va. 556, 476 S.E.2d 227, 236 (1996). "Whether an extrajudicial inculpatory statement is voluntary or the result of coercive police activity is a legal question to be determined from a review of the totality of the circumstances" surrounding the confession. Syl. Pt. 2, **State v.Bradshaw**, 193 W.Va. 519, 457 S.E.2d 456 (1995). However, even when the totality of circumstances shows that "[m]isrepresentations ... or other deceptive practices [were employed] by police officers...[, a confession will not be invalidated unless it is shown that the deception] affected ... [the] voluntariness or reliability [of the statement]." Syl. Pt. 6, **State v. Worley**, 179 W.Va. 403, 369 S.E.2d 706 (1988); see also Syl. Pt. 7, **State v. Farley**,

---

simply are not supported by the weight of the evidence before this court.

8

192 W.Va. 247, 452 S.E.2d 50 (1994).

In **State v. Adkins**, 170 W.Va. 46, 289 S.E.2d 720 (1982), the Court addressed the issue of a defendant's inability to understand the Miranda warnings due to intellectual limitations and explained that "[i]t is the general rule that the intelligence of a person making a confession is but one factor to be considered in determining whether a waiver of rights was voluntary." 170 W.Va. at 53, 289 S.E.2d at 727. The Adkins Court examined a situation under which a person lacks the capacity to understand the meaning of his statement. This Court concluded that "where the defendant's lower than normal intelligence is not shown clearly to be such as would impair his capacity to understand the meaning and effect of his confession, said lower than normal intelligence is but one factor to be considered by the trial judge in weighing the totality of the circumstances surrounding the challenged confession." **Id.** at 54, 289 S.E.2d at 727.

There is also some indication in the record that Petitioner Jarrell is of low intellectual functioning, and that he can neither read nor write. The court finds, however, that the evidence before the court does not clearly show that Petitioner's low intellectual functioning impaired his capacity to understand the meaning and effect of his confession. His trial counsel's testimony in this case regarding Petitioner's level of functioning is the most enlightening evidence submitted to this court on that issue. In the original petition filed, it was alleged that trial counsel was ineffective, in part, because counsel failed to move the court for psychological and psychiatric examination to determine

9

whether Petitioner Jarrell was competent to stand trial and whether he was criminally responsible for the charged murder. Mr. Hancock testified that he has practiced the criminal law for 30 years, and that during this period at various times he served as a assistant prosecutor in Jackson County and Wood County, and that for the rest of the period, he served as defense counsel. He testified that he never observed any evidence that suggested Petitioner Jarrell was not competent to stand trial, and that he discussed this issue with Petitioner who also saw no need for any such evaluation.

Counsel testified that Petitioner was totally able to communicate with counsel and was able to recall dates, times, places and relationships necessary to assist counsel in preparing a defense. Petitioner also communicated with counsel about events in his life leading up to the crime, including his family and criminal history. Regarding his criminal history, counsel testified that Petitioner had "several priors." One "prior" for which Petitioner served time in North Carolina, was a violent felony brought about by an acquaintance stealing this same 30-30 caliber Model 94 Winchester rifle and damaging the rifle. Petitioner "slit the man's throat from ear to ear" over this weapon. Petitioner said "he asked for it, I gave it to him." According to Mr. Hancock, Petitioner was proud of this crime, but disappointed that he missed the victim's jugular, stating that he intended to kill the victim. After Petitioner discharged his sentence in N.C., he sued and was able to recover this weapon. This same weapon, according to Petitioner, was the rifle used by Petitioner to murder Richard O. Ladd in 1998 in Jackson County, W. Va.

10

Trial counsel further testified that Petitioner Jarrell was unrepentant and unremorseful regarding the murder of Richard O. Ladd. In fact, he "exuded a sense of accomplishment" over the commission of the crime and of the commission of the prior violent felony involving the same rifle. Trial counsel also testified that Petitioner's only apparent regret about the Ladd killing was that he only got $100 of the $500 that he was promised to commit the murder. Each time counsel spoke of the case with Petitioner, he would always complain that he was not paid what he was due to commit the murder.

The court finds by a preponderance of the evidence that under the totality of the circumstances on November 20, 1998, the confession of the Petitioner Jarrell was voluntary. Further, that it was not the product of an illegal arrest, because Petitioner was not under arrest until after he provided a confession to the crime of murder; conversely, the court finds that Petitioner voluntarily accompanied the police to the place where he was questioned, was advised by the police that he was not under arrest and was further advised that he was free to go. The court also finds no violation of Petitioner's right to remain silent, inasmuch as he was advised of his rights at least two occasions on the morning of November 20, 1998, and acknowledged that he understood his rights and waived those rights.

11, *Ground 6. - - the conviction was obtained by the use of evidence gained pursuant to an unconstitutional search and seizure*

Counsel for Petitioner fails to clearly state the legal basis for the claim

11

that evidence admitted against Petitioner during his trial was "pursuant to an unconstitutional search and seizure."

However, trial counsel plainly moved to suppress the 30-30 caliber Model 94 Winchester rifle and the ring, which was denied by the trial court.

During the interview process, Petitioner Jarrell also told the police that he had, a few days before, confided in his son, Buddy Jarrell, that he had shot and killed the victim, Richard Ladd. Further, that when the police approached his home at around 1:30 a.m. on November 20, 1998, he, Petitioner Jarrell, threw the murder weapon to the outside of his home from a bathroom window in the rear of the home. Petitioner Jarrell also told the police that Buddy Jarrell, his son, knew the weapon had been discarded, knew its significance and "might" or "possibly" destroy or conceal it. After Petitioner provided an oral confession, the testimony is that he was not free to leave and was otherwise in the custody of law enforcement.

Regarding the rifle, it was recovered at approximately 6:30 to 7 a.m., on November 20, 1998, by Trooper Light, who was directed by Sgt. Rectenwald to return to Petitioner's home on Clear Creek, in Raleigh County, and search for the rifle, believed to outside and behind Petitioner's home. The police did not have a search warrant. When asked why an application for a search warrant had not been made, the officers testified that they were very concerned that the rifle would either be destroyed or concealed by Petitioner's son if law enforcement took the additional time necessary to apply for a search warrant. Trooper Light found and seized the subject rifle approximately 30 feet to the

12

rear of Petitioner's dwelling, over a hill "in greenbriers and brush." When asked if the rifle was on a lawn, he testified that there was not much of a back yard, it was all greenbriers and brush. (Tr., Suppression Hrg., 99-F-36, p. 75).

In **State v. Buzzard**, 194 W.Va. 544, 461 S.E.2d 50 (1995), the court addressed the circumstances under which the police could enter private premises to search without a search warrant. In footnote 11, at 461 S.E.2d 60, the court stated:

> One of the recognized exceptions to the warrant requirement is where exigent circumstances exist at the time of the entry or search. **Mincey v. Arizona**, 437 U.S. 385, 392-93, 98 S.Ct. 2408, 2413, 57 L.Ed.2d 290 (1978). Exigent circumstances exist where there is a compelling need for the official action and there is insufficient time to secure a warrant, police may then enter and search private premises, in this case a motel, without obtaining a warrant. **See Michigan v. Tyler**, 436 U.S. 499, 509, 98 S.Ct. 1942, 1949-50, 56 L.Ed.2d 486 (1978). Exigent circumstances may exist in many situations: three well recognized situations are when police reasonably believe (1) their safety or the safety of others may be threatened, (2) quick action is necessary to prevent the destruction of potential evidence, or (3) immediate action is necessary to prevent the suspect from fleeing. **See State v. Mullins**, 177 W.Va. 531, 355 S.E.2d 24 (1987). The "exigent circumstances" exception has not been shown to be applicable to this case.

The court finds that in regard to the seizure of this rifle, time was indeed of the essence. The confession of Petitioner established 1) reasonable cause to believe that this rifle was the murder weapon, thus, was evidence of

13

a crime; and, 2) the precise location of the rifle at that time. As stated, the police at that time knew that Petitioner's son was aware that his father had murdered Richard Ladd and that his father had attempted to conceal this rifle by throwing it out the bathroom window when the officers came to the residence. When Petitioner left his home in the company of the police at approximately 1:30 a.m., the police also knew that Petitioner's son was left at the home and was, therefore, in a position to destroy or conceal the murder weapon. The court finds that exigent circumstances existed to proceed immediately with the search and seizure for this weapon behind Petitioner's home. The court does not find this to be unreasonable.[2] *Cf.* ***Ker v. State of Cal.***, 374 U.S. 23, 83 S.Ct. 1623 (1963).

The other item of evidence recovered from Petitioner Jarrell was the decedent's ring, which had been buried at a location approximately 200 feet from Petitioner's dwelling at Clear Creek, W. Va. In this instance, however, the State has proven that Petitioner lawfully consented to such seizure by voluntarily agreeing to the seizure by the police. The evidence shows that Petitioner willingly directed the police to the place where the ring was buried and handed the ring over to the police. Petitioner is not entitled to relief based on this ground.

12. *Ground* ⑥ -- *the conviction was obtained by the denial of effective*

---

[2] This evidence also raises an issue whether the place searched was within the curtilage or in an "open field" in which Petitioner did not have a reasonable expectation of privacy. If the latter, no search occurred for Fourth Amendment purposes. "Greenbriers" and "brush" are not consistent with a mowed yard or other area surrounding the dwelling used and occupied in connection with the dwelling. It was, however, in close proximity to Petitioner's dwelling. **See** *State v. Townsend*, 186 W.Va. 283, 412 S.E.2d 477 (1991).

14

*assistance of counsel*

"In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in **Strickland v. Washington,** 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different."   Syllabus Point 5, **State v. Miller,** 194 W.Va. 3, 459 S.E.2d 114 (1995).   Failure to meet the burden of proof imposed by either part of the **Strickland/Miller** test is fatal to a habeas petitioner's claim. **State ex rel. Daniel v. Legursky,** 195 W.Va. 314, 321; 465 S.E.2d 416, 423 (1995).

The first prong of this test requires that a petitioner "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court then must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." **Strickland, supra,** 466 U.S. at 690, 104 S.Ct. at 2066. The petitioner's burden in this regard is heavy, as there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance...." Id. at 689, 104 S.Ct. at 2065. As the West Virginia Supreme Court of Appeals provided in **Miller** in syllabus point 6:

> In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the

15

broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.

In **Scott v. Mohn**, 165 W.Va. 393, 268 S.E.2d 117 (1980), the standards for determining the effectiveness of counsel were developed by the court, wherein it is provided that six inquiries should be made by the trial court when ineffective assistance of counsel has been alleged. Those inquiries are whether:

1) counsel was promptly furnished to the accused;

2) counsel was afforded a reasonable time to prepare to defend the accused;

3) counsel promptly conferred and thoroughly discussed the facts and the law with the client, including but not limited to advising him of his rights, matters of defense, etc.;

4) counsel conducted any investigation of the facts and the law in preparation for trial;

5) counsel exhibited the normal and customary degree of skill possessed by attorneys who are reasonably knowledgeable of criminal law; and,

6) any prejudice resulted to the accused in the event any of the above guidelines were not followed.

A failure to abide by these requirements may constitute a denial of effective assistance of counsel unless the State can establish lack of prejudice thereby.

See also **State v. LeMaster**, 173 W.Va. 176, 313 S.E.2d 453(1984) provides in Syllabus Point 2:

16

Counsel for an indigent defendant should be appointed promptly. Counsel should be afforded a reasonable opportunity to prepare to defend an accused. Counsel must confer with his client without undue [173 W.Va. 177] delay and as often as necessary, to advise him of his right and to elicit matters of defense or to ascertain that potential defenses are unavailable. Counsel must conduct appropriate investigations, both factual and legal, to determine if matters of defense can be developed, and to allow himself enough time for reflection and preparation for trial. An omission or failure to abide by these requirements constitutes a denial of effective representation of counsel unless the state, on which is cast the burden of proof once a violation of these precepts is shown, can establish lack of prejudice thereby.

The second or "prejudice" requirement of the **Strickland/ Miller** test looks to whether counsel's deficient performance adversely effected the outcome in a given case. On this point, the Court has emphasized that "any charge of ineffectiveness of trial counsel must ultimately relate to a matter which would have affected the jury decision." **State v. Watson**, 164 W.Va. 642, 652, 264 S.E.2d 628, 634 (1980). In **State v. Thomas** 157 W.Va. 640, 203 S.E.2d 445, 461 (1974) the court stated: "If counsel's error, proven to have occurred, would not have changed the outcome of the case, it will be treated as harmless error." Finally, the burden of proof on the ineffective assistance of counsel claim is on the petitioner to prove the same by a preponderance of the evidence." Syl. Pt. 22, **State v. Thomas**, 157 W.Va. 640, 203 S.E.2d 445 (1974).

Petitioner Jarrell alleges that his trial counsel was ineffective, because

17

his counsel prevented or dissuaded him from testifying at the suppression hearing and the trial and failed to call Petitioner or any other witness to offer evidence tending to justify a grant of mercy from the Jury, yet during closing argument, argued for mercy when no evidence had been submitted.

The court finds by a preponderance of the evidence that trial counsel discussed with Petitioner Jarrell the fact that he had a right to testify, if he chose to do so. Counsel also made it clear to Petitioner that this right to testify applied to the suppression hearing and to the trial. Further, that Petitioner Jarrell was reluctant to testify, inasmuch as he had testified before and felt uncomfortable in testifying and being required to answer questions. Petitioner Jarrell expressed to counsel that he did not wish to testify for these reasons. Petitioner Jarrell also expressed to the Circuit Judge presiding over the case that he did not wish to take the stand and testify. (Tr., Trial, 99-F-366, 11/17/99, pp. 183-185). Trial counsel testified that, based on his conversations with Petitioner Jarrell, it would have been difficult to persuade him to take the stand and testify. The court is unable to find that Petitioner Jarrell was denied his right to testify, whether at the suppression hearing or at trial, and finds that he voluntarily chose to remain silent during the suppression hearing and trial.

Trial counsel testified that no "plea deal" was ever forthcoming from the State in Petitioner's case. Counsel therefore discussed with Petitioner Jarrell the overall strategy of demanding a speedy trial before accomplices received plea agreements and became witnesses against him; and, of attempting to

18

persuade the trial court to exclude the confession on the basis that Petitioner was in fact arrested at his home on November 20, 1998, and the State violated the "prompt presentment" rule for the primary purpose of obtaining a confession from him, inasmuch as such a defense could be presented without calling Petitioner as a witness at the suppression hearing. If the confession was excluded, the State would have no evidence connecting Petitioner Jarrell to the murder. The 30-30 caliber rifle was not found to be the murder weapon, although it could not be excluded.[3]

Petitioner Jarrell agreed with counsel's strategy. In fact, none of the accomplices testified at Petitioner's trial.

Trial counsel agreed with Petitioner that he should not testify, not because of low intellectual functioning, but because of his demeanor, affect, language, approach to life and complete absence of empathy for the victim or remorse for his crime. Counsel was also very concerned that Petitioner Jarrell, when asked about his 30-30 caliber Model 94 rifle would explain the history of the firearm, including the violent felony committed by Petitioner in North Carolina over the firearm and that he would "exude a sense of accomplishment" over that crime and the Ladd crime. Counsel was of the view that for Petitioner to testify would be to his detriment, because was proud of fact that he killed the victim, regretful only that he received but $100 of the $500 promised to him for the murder.

---

[3] Forensic evidence established that the bore of the weapon was rusted and deteriorated, such that 2 test bullets fired from the weapon could not be definitively determined -- through toolmark identification -- to have been fired from this weapon. However, the bullet that killed Ladd, which

19

P318

Trial counsel's strategy, therefore, was dictated by Petitioner Jarrell's decision to remain silent at the suppression hearing and trial. Under those circumstances, the court is unable to find that counsel's actions in this regard, in light of all the circumstances, were outside the broad range of professionally competent assistance.

Habeas counsel also alleges that counsel was ineffective, because no witnesses were called to establish a credible case for an award of "mercy" from the Jury. It is noted that evidence regarding the "mercy" issue was before the Jury as contained in the State's case and noted by trial counsel in her closing argument. Beyond that, however, Petitioner has failed to prove that any such witnesses were available to trial counsel, and there has been a failure to allege and prove the purport or substance of the testimony of any such supposed witness. The court cannot speculate that such witnesses exist or that their testimony, had they been called, would have likely resulted in "mercy" being granted to Petitioner Jarrell.

The court finds that Petitioner has failed to prove by a preponderance of the evidence that trial counsel was ineffective.

13. *Ground* -- *the conviction became final by virtue of the denial of petitioner's right to effective counsel for a meaningful appeal*

This ground for habeas relief rests on the basis that trial counsel failed, in the petition for appeal, to raise the argument that the confession was not voluntary inasmuch as it was coerced, the product of threats, promises and coercion; that counsel was ineffective; and, that the search and seizure of the

was recovered from the murder scene, was consistent with this caliber and type of rifle.

20

rifle and ring was constitutionally invalid.

The petition for appeal would necessarily be limited to matters in the trial record in Case No. 99-F-36. Appellate counsel, for this reason, did not have an evidentiary basis on which to argue that the confession was coerced, involuntary and the product of threats and promises. From the testimony presented in this case, the court finds that appellate counsel, Mr. Hancock, did present the issues of inadmissibility of the confession because it was in violation of the prompt presentment rule and the inadmissibility of the rifle and the ring because it was the product of illegal search and seizure. These issues were fairly raised by the evidence in the case.

In like manner, the issue of whether counsel was ineffective is ordinarily one for review in habeas corpus.

The court is of the opinion that Petitioner has failed to establish that he did not receive the effective assistance of counsel in connection with his appeal.

*14. Ground — — the conviction was otherwise tainted by the various numerous errors which effectively denied the petitioner due process of law*

Habeas counsel is not specific as to what other "numerous errors" render Petitioner's conviction invalid.

However, other grounds set forth in the Petition filed *pro se* by Mr. Jarrell, that have not been addressed above, are as follows:

A.   THE TRIAL COURT ERRED IN THEIR (sic) REFUSAL TO GRANT THE PETITIONER'S MOTION FOR JUDGMENT OF ACQUITTAL FOLLOWING THIS PETITIONERS' JURY TRIAL. THE EVIDENCE DID NOT SUSTAIN THE VERDICT.

21

P320

The only evidence presented at the trial of the underlying case was the State's case-in-chief. Through its witnesses, the State established that the manner of death of Mr. Ladd was homicide by a through and-through 30 caliber bullet wound. The State further put the confession of the Petitioner before the Jury, together with evidence of the recovery of Petitioner's 30-30 caliber rifle and the decedent's ring on Petitioner's property. The court is of the opinion that a reasonable, rational jury could find guilty from this evidence beyond a reasonable doubt. Petitioner is not entitled to habeas relief on this ground.

B.    THE TRIAL COURT FAILED TO PROPERLY EXAMINE THE PETITIONER JARRELL AS TO HIS ABILITY TO UNDERSTAND THE PROCEEDINGS. DEFENSE COUNSEL WAS INEFFECTIVE BECAUSE PETITIONER "WAS DENIED A PSYCHOLOGICAL AND PSYCHIATRIC EVALUATION SO AS TO DETERMINE WHETHER HE WAS ABLE TO UNDER THE PROCEEDINGS BEFORE HIM.

Trial courts rely greatly (although not solely) upon defense counsel on the issue of whether a person charged with a crime is competent to stand trial, that is, whether the defendant has a basic understanding of the process and whether that person is able to assist counsel in the preparation of a defense to the charge.

Based on the testimony of Laurence Hancock, trial counsel for Petitioner Jarrell, the court finds that no basis existed upon which for counsel to move the court in 1998 or 1999 for a competency evaluation pursuant to *W. Va. Code 27-6A-1 et seq.*

The test for "competency to stand trial" is not set forth in the statute.

22

However, the Supreme Court of Appeals has defined that standard. **See** Syllabus point 2 of **State v. Arnold**, 159 W.Va. 158, 219 S.E.2d 922 (1975), which provides as follows:

> To be competent to stand trial, a defendant must exhibit a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and a rational, as well as factual, understanding of the proceedings against him.

While there exists evidence that Petitioner Jarrell is of low intellectual functioning, there is no credible evidence contradicting trial counsel's testimony to the effect that Petitioner was very able to communicate with his attorneys and recalled dates, times, places and relationships relevant to the case and necessary to assist counsel in preparing a defense. Jarrell was also able to explain important events in his life leading up to the crime in 1998, including being able to explain in detail his participation in previous crimes revealed by his criminal history. He had testified in a previous matter and knew that if he testified in this case he would be asked questions about the crime, and he fully appreciated that he did not want to do this. That testimony establishes that Jarrell had a the present ability to consult with his attorneys with a "reasonable degree of rational understanding" and that he had a rational and factual understanding of the process, including trial strategy discussed with him by his attorneys. Petitioner has failed to prove that he is entitled to habeas relief on these grounds.

       C. TRIAL COUNSEL FAILED TO RAISE OBJECTIONS TO THE LACK OF THE COURT'S JURISDICTION TO SO TRY THE PETITIONER DUE TO THE INVALID INDICTMENT CHARGING FIRST DEGREE MURDER.

23

It is further alleged that counsel was ineffective for failing to file a petition for a writ of prohibition in the Supreme Court of Appeals when the trial court made adverse rulings regarding admissibility of the rifle and the ring.

The court has reviewed the Indictment in the underlying case. It is in the statutory form. *See W. Va. Code 62-9-3.* The Supreme Court of Appeals holds that an Indictment for murder that is in the statutory form is sufficient to charge Murder of the First Degree. *E. g. State v. Burdette*, 63 S.E.2d 69, 135 W.Va. 312 (1950). There is no legal deficiency with the form of the Indictment, therefore, this court did have jurisdiction to try Petitioner on the Indictment for murder of Richard O. Ladd.

Regarding counsel's failure to seek a petition for writ of prohibition before the trial, in order to challenge *in camera* rulings of the court, this court is not cited to any case or other authority that provides or suggests that reasonable defense counsel should seek an extraordinary writ to reverse a pre-trial ruling in a criminal case. It must be noted these very issues were before the court on direct appeal, pursuant to the Petition for Appeal filed after conviction and sentencing. No prejudice, therefore, is suffered by Petitioner Jarrell, and the court is unable to conclude that his counsel was ineffective for failing to seek a writ of prohibition in advance of the Jury trial.

D. PETITIONER WAS DENIED A PRELIMINARY HEARING.

Only error that amounts to violation of constitutional rights is cognizable in habeas corpus. *E. g., SER Kitchen v. McBride, Warden*, No.

24

P323

34713, 2010 WL 2346245 (W. Va. 2010)([a] habeas corpus proceeding is not a substitute for a writ of error, in that ordinary trial error not involving constitutional violations will not be reviewed).     Petitioner's right to a preliminary hearing is provided by statute, not by the federal or W. Va. Constitution.

The records of the court indicate Petitioner Jarrell waived his right to a preliminary hearing on the charges for which he was convicted on November 30, 1998, before Mary Jane Jarrell, Magistrate of Jackson County, W. Va.

E.   THE TRIAL COURT ERRED IN THE ADMISSION OF HEARSAY EVIDENCE BEFORE THE JURY AND EVEN A LIMITING INSTRUCTION COULD NOT CURE THE RESULTING PREJUDICE TO THE PETITIONER WHICH DENIED THE PETITIONER A FAIR TRIAL.

Petitioner alleges that the testimony of Beth Burgess and Wyoma Petrey was entirely hearsay and should have been excluded, with a cautionary instruction.

A review of the trial record shows that these two witnesses were called to establish the existence of a Conspiracy to commit the murder of Richard O. Ladd, which is charged by the second count of the Indictment. Beth Burgess, according to her testimony, was the live-in lover of Jill Hodge, a neighbor of Petitioner Jarrell. She testified that she was an eyewitness to the formation of this conspiracy among Charles Hodge, Jill Hodge, Robin Ladd and Oliver Jarrell, the Petitioner herein, the purposes of which was to kill Richard O. Ladd. She relayed the substance of the statements made in her presence on at least 4 separate occasions when the conspirators met and planned how Ladd would be murdered, why he would be murdered, how much Petitioner

25

P324

Jarrell and Jill Hodge would receive for actually committing the murder, delays in carrying out the plan to murder Ladd, pressure brought to bear on Jill Hodge by her father, Charles Hodge and Petitioner, to execute the plan to murder and other details. Petitioner was not present for all of these discussions, but he was present for most and Beth Burgess relayed to the Jury incriminating statements made by Petitioner Jarrell to her that were in furtherance of the conspiracy and proved the existence of the conspiracy, together with the fact that Petitioner was one of the conspirators. Those statements included what Petitioner was going to do with the money he received as compensation for the murder.

Wyoma Petrey testified that she was a friend of Jill Hodge, one of the co-conspirators of Petitioner Jarrell, and that Jill Hodge told her that "her and Buddy was the one that killed a man." (Tr., 99-F-36, 11/16/99, p. 142). Cross examination developed that Jill Hodge's statement allegedly made to Ms. Petrey was "after the search warrant. At her mom and dad's house." Objection to this testimony was overruled.

The testimony of Beth Burgess constitutes direct evidence of the formation of a conspiracy to commit murder, a conspiracy that clearly, according to the testimony, included Petitioner Jarrell. Many of the statements attributed by this witness to Charles Hodge, Jill Hodge and/or Robin Ladd are admissible, because those statements are made by co-conspirators during the course of the conspiracy to further the plan to kill Richard Ladd.

26

Trial objections were based on the supposed hearsay nature of this testimony. However, statements made by a co-conspirator, during the course and in furtherance of a conspiracy are not "hearsay."

*WVREV RULE 801, Definitions*, provides in pertinent part as follows:

The following definitions apply under this article:

. . . .

(d) Statements Which Are Not Hearsay.  A statement is not hearsay if--

. . . .

(2) Admission by Party-Opponent.  The statement is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity, or (B) a statement of which the party has manifested an adoption or belief in its truth, or (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship, or *(E) a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy.* (emphasis added)

Statements admissible pursuant to Rule 801(d)(2)(e) are not inadmissible under the Confrontation Clause, because those out of court declarations are not "testimonial." **See *Crawford vs. Washington*,** 541 U. S. 36, at 56, 124 S. Ct. 1354, at 1367 (2004).

No specific objection based on the Confrontation Clause of the U. S. Constitution or of the W. Va. Constitution was made by the defense during the testimony of either witness.

Absent a specific objection based on the Confrontation Clause, the objection is waived.  **See *State v. Robin Ladd*,** 210 W.Va. 413, 557 S.E.2d 820 (2001). Error, if any, of a non-constitutional nature is not cognizable in habeas corpus. **See *SER Kitchen v. McBride, Warden, supra.***

27

Statements allegedly made by Petitioner Jarrell on these occasions are also admissible as evidence, being admissions against interest by a party opponent.

The court is of the opinion that Petitioner is not entitled to habeas relief based on the fact that the trial court admitted most of the testimony of Beth Burgess and Wyoma Petrey.

F. THE TRIAL COURT ERRED IN NOT REPLACING THE PROSECUTOR IN THE PETITIONER'S TRIAL WHEN THE PROSECUTOR AND THE INVESTIGATING OFFICER WHERE (sic) MARRIED THEREBY CREATING AN INHERENT CONFLICT OF INTEREST TO THE FAIR ADJUDICATION OF THE PETITIONER'S GUILT OR INNOCENCE.

This ground does not allege error of constitutional proportion and is therefore denied.

This ground was also raised and finally adjudicated by this court in Civil Action No. 02-C-125.

G. THE TRIAL COURT ERRED IN FAILING TO FIND A VIOLATION OF WEST VIRGINIA CODE 62-1-5 REQUIRING THE PROMPT PRESENTMENT OF A PRISONER BEFORE A MAGISTRATE.

This ground is denied, for the reasons assigned hereinabove.

H. - - the petitioner's original petition for habeas corpus was illusory inasmuch as he was precluded from effectively litigating the above-mentioned issues in Jackson County Case No. 02-C-125 by virtue of the ineffectiveness of his counsel in such habeas corpus case and the ineffectiveness of such counsel in the appeal from that case, all of which being exacerbated by the petitioner's marginal intellect.

This court has fully addressed and resolved all of the grounds for relief set forth in the original and Amended Petition filed in this case, including the one not waived by Petitioner Jarrell in the former case, that is, "ineffective

assistance of counsel." No further ruling need be made regarding this ground.

## ORDER

Based on the foregoing Findings of Fact and Conclusions of Law, it is

ADJUDGED and ORDERED as follows:

That the Petition and the Amended Petition for a Writ of Habeas Corpus

*ad subjiciendum* sought by the Petitioner Oliver A. Jarrell is hereby denied

and overruled;

That this civil action is dismissed, with prejudice;

That the court finds that the defendant has knowingly and

intentionally, with the advice of counsel, waived and forever relinquished all

grounds for habeas corpus relief not asserted in this Omnibus Habeas Corpus

Proceeding;

That the clerk shall deliver attested copies of this order to Roger

Williams, counsel for Respondent and to David R. Karr, Jr., counsel for

Petitioner.

That this is a final order, and the clerk shall remove this action from the

active docket of the court.

All of which is **ORDERED**, accordingly.


ENTERED: January 20, 2011

_Thomas C. Evans III_

ENTERED THE _20th_ DAY OF

_Jan 2011_

ORDER BOOK _105_ PAGE

_105_

_Bruce W. Dilber_
CLERK CIRCUIT COURT

Thomas C. Evans, III, Circuit Judge
Fifth Judicial Circuit
State of West Virginia

29